Boynton, J.
The plaintiff in error contends that the judg *81 ment of the special term of the superior court against her is erroneous for two reasons.
First, that being a married woman when her liability is alleged to have been incurred, and not having charged her separate estate with the performance of her engagement or obligation to pay the defendants for the services rendered in her behalf, or for the money advanced for her, a personal judgment was wholly unauthorized ; and, secondly, that inasmuch as the transaction contemplated that the security for the loan should assume the form of an absolute conveyance, with a lease back for ten years, with a right of redemption at the end of the term, instead of an ordinary mortgage, the purpose being to evade the revenue laws of the state by so covering up the loau as to conceal the real character of the transaction, the engagement or obligation was void as against jmblic policy. As respects this objection, whatever might be the effect of the transaction, if the person from whom the money had been procured 'were seeking to enforce the provisions of the agreement, —with which point we are not now concerned, — the relation of the defendants in error to the transaction, or to the form of the security to be given for the money borrowed, was not such, in our judgment, as -to defeat their right to compensation for the services rendered, or the money advanced. They were constituted agents to procure a loan, upon terms jarescribed by the plaintiff and her husband. The written request to procure the same explicitly defined the form of the security the defendants were directed to adopt. It was in pursuance of these directions that the services were rendered and the money paid for the examination of the title to the property, which was to be pledged as security for the debt. The agreement by the defendants was fully executed, and the services rendered were performed in good faith. .To refuse them redress, under the circumstances; for the reason stated, would, it seems to us, be applying the doctrine which denies a remedy for the enforcement of contracts contrary to public policy, to a state of facts not justly falling within the operation of the rule. The services they performed were distinctive in their character and perfectly lawful; and, had the transaction been executed *82 'throughout in the mode contemplated by the parties, as respects the form of the security to betaken, it would, in fact and legal effect, have been but a loan secured by what in equity would have been regarded as a mortgage only, and the investment, without doubt, have been as much the subject of taxation under the statute relating to that subject, as if a mortgage pure and simple had been taken.
Where the transaction, within the understanding of the par ties, is a loan of money upon security, no form which the transaction may assume can so disguise it, as to change its legal character or effect.
It remains to consider the effect of the coverture of the plaintiff upon the obligation she assumed, and upon the right to give a personal judgment against her. The facts are briefly these. Being the owner of a separate estate, which was heavily encumbered by mortgage, she engaged the defendants in error, her husband joining, to secure for her a loan of $10,000 to enable her to remove the mortgage from her estate. She agreed to pay an attorney’s fee for making an examination of her title, and a commission of $100 to the defendants for securing the loan. The services stipulated for were fully performed, the defendants paying $50 from their own funds to the attorney making the abstract of title. • The plaintiff refused to accept the loan, or to pay for the services rendered in procuring it. We have no hesitancy in pronouncing the agreement made, to be one, not only having direct reference to Mrs. Patrick’s separate estate, but made for its benefit. The object was to remove an existing incumbrance upon the property, and it was to accomplish this object that the services of the defendants were engaged. The fact that the loan was to be secured by a new mortgage upon the same property, affects the question but very little. She was to get rid of a mortgage debt then due and pressing, by substituting another therefor, to become due ten years thereafter.
Whether the separate estate would in fact be benefited by exchanging one mortgage for another, is not the test of liability. A married woman, to the extent of her power of disposition over her separate estate, may charge it with such *83 engagements as she sees fit to make. If subjected to no imposition, a fact always to be determined in view of the relation she sustains to the parties to the transaction, in connection with its nature and subject-matter, she may charge the property to the extent she might bind herself at law, were she sui juris, unless in so doing she exceeds some limitation upon her power of disposition. Pollock on Contracts, 13. And that there is now no limitation upon her power to bind her estate to the discharge of liabilities created on account thereof, where the estate is acquired under the statute, will be shown hereafter.
The question now is, whether an intention upon the part of Mrs. Patrick, to charge her separate estate with payment for the services rendered, and money paid by defendants, for the benefit of such estate, will be implied from the character of the transaction and the nature of the engagement entered into. The principles announced in previous adjudications of this court require an affirmative answer to this question.
In Graves v. Phillips, 20 Ohio St. 371, it appeared that Mrs. Graves, owning a separate estate, had purchased a piano, and given her note therefor, and that the same was purchased for her separate use, and as her separate property. The court held that an intention to charge her separate estate with the payment of the note might be inferred from its execution. In Avery v. Van Sickle, 35 Ohio St. 210, it was held that where a married woman acquires the title to property by purchase, which by force of the statute becomes her separate estate, and executes a promissory note therefor, an implication arises, in the absence of proof showing a different understanding, that she thereby intended to charge her separate estate with its payment. And the circumstance that upon sale of the property so purchased, in proceedings in foreclosure, the proceeds were exhausted in the payment of prior liens thereon, did not affect the creditor’s right to payment of the note out of the residue of her estate. So also, in Williams v. Urmston, 35 Ohio St. 296, we held that where a married woman, having a separate estate, executes a promissory note as surety for another, a presumption arises that she thereby intended to *84 charge such estate with its payment. The principle of the first two cases is clearly applicable to the present. The liability, in each, was incurred not only on account, but for the direct benefit, of the estate, and was therefore held to be a just charge ujaon it. “The test of liability,” says Mr. Pollock, “ would seem on principle to be, whether the transaction out of which the demand arises had reference to, or was for the benefit of the separate estate.” Pollock on Contracts, 75.
Cases that deny the liability of the estate, where the wife becomes a surety, and does not expressly charge her estate 'with the payment of the debt, admit the liability where the engageinent either has reference to the estate, or is for its benefit. Yale v, Dederer, 22 N. Y. 450 ; Ballin v. Dillaye, 37 N. Y. 35 ; Manhattan B. & M. Co. v. Thompson, 58 N. Y. 81; Williard v. Eastham, 15 Gray, 328.
It was said, in a late English case, by Lord Justice James, that “ it would be very inconvenient that a married woman, with a large separate property, should not be able to employ a solicitor, or a surveyor, or a builder or tradesman, or hire laborers or servants, and very unjust, if she did, that they should have no remedy 'against such separate property.” London Chartered Bank, of Australia v. Lempriere, 4 P. C. (Law R.) 594.
Holding the separate estate of Mrs. Patrick liable to the defendants’ demand, we are also of the opinion that a personal judgment against her was proper. Her obligation is one upon which, were she sole, she would be liable at law. It is a contract or obligation upon which, under section 28 of the Code, as amended March 30, 1874, she might have been sued alone; and being of that character, the statute requires the like judgment to be rendered and enforced, in all respects, as if she were unmarried. 71 Ohio Laws, 47. It was one of the objects of this section, as thus amended, to so far modify the disabilities of coverture, as to authorize a personal judgment to be rendered against a married woman, where such judgment would have been proper, had she remained unmarried.
This provision, as amended, wrought a radical change in the. *85 remedy as respects the character of the judgment to be rendered, as did the amendment of April 18, 1870, as to the extent of the property that might be reached to discharge the liability. Prior to the date at which a personal judgment was authorized, the decree, according to the English practice, and that of some of the states, was directed against the estate, declaring the separate estate vested in the wife at the date of the decree which it was within her power to dispose of, chargeable with the payment of the debt. Picard v. Hine, L. R., 5 Ch. App. 274; Davies v. Jenkins, L. R., 6 Ch. D. 730; Collett v. Dickenson, L. R., 11 Ch. D. 687; Johnson v. Gallager, 3 De Gex, F. & J. 520; Armstrong v. Ross, 20 N. J. Eq. 109 ; see Todd v. Lee, 15 Wis. 365.
As there was no personal liability, no personal judgment could be awarded, and the decree only reached property which it was within the wife’s power to bind. But under the statute as amended, the same judgment is required, with the same process for its enforcement as would bo awarded if the wife were sole; and, saving to her such exemptions as are provided for heads of families, her separate estate is made liable for any judgment rendered against her, to the same extent as would be the property or estate of her husband, for any judgment rendered against him. This subjects all her separate property and estate acquired or held under the act of 1861, and its amendments, with the exception named, to the payment of the debts chargeable upon it; and also all separate estate otherwise acquired, unless restrictions are laid on her power to charge the same by the instrument creating the estáte. Before the amendment of 1S70 it is dorrbtful whether the creditor could have reached more than the personal estate of the wife, with the rents and profits of her real estate arising upon a lease for the term for rvhich the wife could have leased the same without the consent of the husband. But now the creditors are substantially let in upon the whole estate, and where there are no liens to adjust, and the wife holds the legal title to the property constituting her separate estate — in other words, where there arc no equitable circumstances calling for the exercise of the equity powers of the court — a personal judg *86 ment, to be collected by execution, would seem not only an appropriate remedy, but to be clearly authorized by the statute. The Married Woman’s Property Act of England, of 1870, provided that “ a husband shall not, by reason of any marriage which shall take place after this act shall come into operation, be liable for the debts of his wife contracted before marriage, but the wife shall be liable to be sued for, and any property belonging to her for her separate use shall be liable to satisfy, such .debts, as if she had continued unmarried.” In giving construction to this provision in Exp. Holland, L. R., 9 Ch. App. 307, Lord Cairns said: “ I think the meaning of the section is, that although the husband is not liable for the debts in question, the separate property of the wife is to be liable, and that for the purpose of reaching it she is to be subject to the ordinary process of law and equity.” Section 28 of the code, as amended in 1871, gives the same process, resort being had to the one that is appropriate to the case.
The objection that it does not sufficiently appear that the plaintiff in error owns a separate estate, is not well founded. The petition alleges, and the fact is not denied, that the contract sued on related to her separate estate, and was made for its benefit. The contract related to no other property than that therein described, to which, it was alleged, she held the legal, title. It thus appears that the property to which the agreement related was held by her for her separate use. Whether she had other property does not appear. Having a separate estate, the whole of it, subject to the exemptions provided for heads of families, was liable for the judgment.

Judgment affirmed.